UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 17bk10230 |
| Anthony M. and Virginia J. Montemurro, | Chapter 11 |
| Debtors. | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

Before the court is the Request of Walden Investments Group, LLC for Allowance and Payment of Administrative Expense Pursuant to § 543(c)(2) of the Bankruptcy Code [Dkt. No. 71] (the "Application") brought by Walden Investments Group, LLC ("Walden").

The Application calls into question the rules governing payment of prepetition receivers as well as the right to payment of such a receiver whose status at the commencement of a bankruptcy case is uncertain. For the reasons more fully discussed herein, although Walden was a "custodian" for the purposes of the applicable statutes and is entitled to seek compensation as an administrative expense, Walden has failed to establish that its claim meets the applicable standard set forth in the statute. As a result, the court requires a further hearing on the reasonableness of the compensation sought.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c); *Wellness Int'l Network, Ltd. v. Sharif*, — U.S. —, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough"). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be

entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Matters arising under section 503(b) of the Bankruptcy Code are matters that may only arise in a bankruptcy case and, thus, the bankruptcy court is empowered to enter final orders with respect to the same. *Matilla v. Radco Merch. Servs., Inc. (In re Radco Merch. Servs., Inc.)*, 111 B.R. 684, 686 (N.D. Ill. 1990) ("A claim for administrative expenses is one of the core proceedings listed in 28 U.S.C. § 157(b)(2)(B)."); *In re World Mktg. Chicago, LLC*, 564 B.R. 587, 592 (Bankr. N.D. Ill. 2017) (Barnes, J.) (same). It follows that matters arising under section 543 are also within the court's core jurisdiction. *In re Packard Square LLC*, 575 B.R. 768, 770–71 (Bankr. E.D. Mich.), *reconsideration denied*, 577 B.R. 533 (Bankr. E.D. Mich. 2017). Further, all parties have consented to this court's entry of a final order adjudicating the Application.

Accordingly, determination of the Application is within the scope of the court's jurisdiction and constitutional authority.

## BACKGROUND AND PROCEDURAL HISTORY

Because of varying positions taken and requests made by Walden throughout this bankruptcy case, a sequential recitation of the history of events related to Walden, the Property (defined below) and the Application is helpful.[1]

Prior to the commencement, Anthony M. and Virginia J. Montemurro (the "Debtors") owned and managed real property commonly known as 4300-4306 West Berteau, Chicago, Illinois (the "Property"), including the building located thereon. The Property was held under an Illinois land trust pursuant to the Trust Agreement dated November 21, 1996 and known as Trust Number 1048 (the "Land Trust"). The trustee under the Land Trust is First Nations Bank, f/k/a FNBW Bank f/k/a First National Bank of Wheaton (as trustee, "FNBT").

At some time prior to 2013, the Property became vacant and fell into disrepair. As a result, the City of Chicago commenced an abatement action in the Circuit Court of Cook County, Municipal Department, First District (the "State Court"). That proceeding, Case No. 13 M1 402611, in which the City alleged dangerous and unsafe conditions regarding the Property, was commenced in April 2013 against the Land Trust, the Debtor, the Internal Revenue Service, the Illinois Department of Revenue and others.

On September 14, 2015, at the City of Chicago's request, the State Court appointed Walden as a limited receiver over the Property (the "Initial Receiver Order"). That role was broadened somewhat in a later order on October 19, 2015 (the "Second Receiver Order" and together with the Initial Receiver Order, the "Receiver Orders"). One of the express purposes of Walden's

---

[1] Though the items set forth herein do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

2

appointment was to prepare the building on the Property for demolition and to demolish that building. On December 10, 2015, Walden recorded the Receiver Orders with the Cook County Recorder of Deeds.

On November 14, 2016, the building on the Property was demolished. On December 12, 2016, the State Court entered an order allowing Walden until March 28, 2018, to file an accounting of its expenses and setting objection deadlines relating thereto (the "Accounting Order"). At that point, by all appearances Walden had performed all tasks required of it as receiver under the Receiver Orders but one, repair of a property line fence. Walden was authorized by the State Court in the Accounting Order to perform that task. By order dated February 27, 2017, Walden's time to submit the accounting was extended to April 3, 2017.

That final accounting was apparently submitted to the State Court on March 30, 2017 (the "Final Accounting") and forms the basis of the Application at bar. The use of the term "apparently" here is quite intentional, for the Final Accounting as set forth in Exhibits 8 through 16 of the Application, *see* Application, at ¶ 18 (stating that the Final Accounting is those Exhibits), contains items dated *after* March 30, 2017. For example, page 8 of Exhibit 11 of the Application begins a "Receiver's Final Report—5 for the period July 22, 2016 – April 24, 2017" dated April 24, 2017. The title and contents of that document belies Walden's assertion that these exhibits are the Final Accounting as submitted to the State Court on March 30, 2017.

On March 31, 2017 (the "Petition Date"), the Debtors commenced the above-captioned, joint individual chapter 11 case. On May 26, 2017, Walden moved this court for relief from the automatic stay. *See* Motion to Lift Stay [Dkt. No. 40] (the "Relief from Stay Motion"). In the Relief from Stay Motion, Walden argued that it should be permitted relief from stay in order to perfect a lien that, but for the existence of the automatic stay, it would have received under state law.

On June 6, 2017, the court conducted an initial hearing on the Relief from Stay Motion. On that same date, the court entered a scheduling order relating to the same. *See* Order [Setting Briefing on Relief from Stay Motion] [Dkt. No. 48]. Subsequent to the entry of that order, first FNBT and then the Debtors objected to the relief sought in the Relief from Stay Motion. *See* Objection of First Nations Bank to Walden Investments Group, LLC's Motion to Lift Automatic Stay [Dkt. No. 49] and Debtors' Response to Motion to Lift Automatic Stay of Walden Investment[s] Group, LLC [Dkt. No. 50], respectively. Walden filed a reply on July 11, 2017. *See* Walden Investments Group, LLC's Reply in Support of Its Motion to Lift Automatic Stay [Dkt. No. 52].

On July 26, 2017 (the "Stay Hearing"), the court ruled orally on the Relief from Stay Motion, denying the request as, among other reasons, it runs contrary to the express purposes of the automatic stay. *See* Order [Denying for the Reasons Stated on the Record Motion for Relief from Stay] [Dkt. No. 55]; Transcript of Hearing Re: Motion for Relief from Stay as to Real Estate Filed by Stephen Peck on Behalf of Walden Investment Group, LLC Before The Honorable Timothy A. Barnes United States Bankruptcy Court Judge [Dkt. No. 61] (the "Stay Hearing Transcript"), at p. 17 ("[T]he whole purpose of bankruptcy is to put a freeze and allow the Bankruptcy Code to decide what the priority and payment of creditors is. ... [W]hat you're asking runs contrary to the purpose of bankruptcy."); *see also Redmond v. Fifth Third Bank*, 624 F.3d 793, 800 (7th Cir. 2010 ("*Section 362(a) prohibits collection activities in violation of the stay, such as* attempting to convert an unsecured prepetition claim into a secured claim, attempting to obtain possession of property of the Chapter 13 estate, or *attempting to perfect a lien against property of the estate.*") (emphasis added). At the Stay Hearing, Walden

3

also modified its arguments to include an argument that it had an inchoate interest in the Property. That argument was considered and rejected by the court, relying in part on the Seventh Circuit's ruling in *Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 792 (7th Cir. 2011).[2]

Following the denial of the Relief from Stay Motion, the Debtors moved to sell the Property. *See* Motion To Approve Sale of Real Estate and for Related Relief [Dkt. No. 60] (the "Sale Motion"). On August 2, 2017, prior to a hearing on the Sale Motion, Walden sought to be excused from complying with section 543 of the Bankruptcy Code. *See* Motion To Excuse Compliance with § 543(b) of the Bankruptcy Code [Dkt. No. 70] (the "543 Motion"); *see also* 11 U.S.C. § 543(d) (providing conditions under which a custodian may be excused from compliance with section 543).

On that same date, Walden commenced an adversary case, seeking to establish that it had a lien in the Property under Illinois state law. *Walden Invs. Grp, LLC v. First Nations Bank, F/K/A FNBW Bank F/K/A First Nat'l Bank of Wheaton, as Trustee under a Trust Agreement Dated November 21, 1996 and known as Trust Number 1048, et al. (In re Montemurro)*, Adv. No. 17ap00401 (Bankr. N.D. Ill. Aug. 2, 2017) [Dkt. No. 72] (the "Adversary"). In the Adversary, Walden asserts in greater detail its inchoate interest arguments, claiming an interest in the Property by virtue of both the Illinois statute governing its appointment, 65 Ill. Comp. Stat. Ann. 5/11-31-2, and Illinois common law relating to charges.[3]

Also on that same date, Walden filed the Application at bar. The attachments to the Application, the Sale Motion and the Adversary complaint are identical and voluminous, despite the different relief sought in each filing.

In addition to all of the foregoing, Walden objected to the Sale Motion. *See* Objection to Sale of Real Property and for Related Relief [Dkt. No. 83] (the "Sale Objection"). In the Sale Objection, Walden raised a number of *pro forma* objections regarding the propriety of the sale of the Property, and more specifically to it, raised the concern that any interest it may have in the Property was not adequately protected if the Property was sold. At a hearing conducted on September 27, 2017, the court overruled the *pro forma* objections and permitted the sale to proceed. In order to protect Walden's alleged inchoate interest in the Property but not delay the sale for that interest to be determined, the court ordered that Walden's interest be protected by way of reservations in the order granting the Sale Motion. *See* Order Approving Sale of Real Estate [Dkt. No. 102].

With respect to the Application, the matter is now fully briefed. On September 6, 2017, the Debtors filed a Response to Walden Investments Group, LLC's Request for Allowance and Payment of Administrative Expense Pursuant to Section 543(c)(2) of the Bankruptcy Code [Dkt. No. 88]. On September 13, 2017, Walden filed a Reply in Support of Motion for Approval of

---

[2] The Stay Hearing Transcript is replete with transcription errors. For example, the Stay Hearing Transcript refers to *Grede* as "Greedy" throughout. Where relevant herein, the court will note the corrections.

[3] Recently the court considered and rejected two motions to dismiss the Adversary, wherein FNBT and Walden sought dismissal based, in part, on an argument that Walden was precluded by the ruling on the Stay Relief Motion from asserting an interest in the Property. *Walden Invs. Grp, LLC v. First Nations Bank (In re Montemurro)*, Case No. 17bk10230, Adv. No. 17ap00401, 2017 WL 6541135 (Bankr. N.D. Ill. Dec. 21, 2017).

Administrative Claim Pursuant to Section 543(c)(2) of the Bankruptcy Code [Dkt. No. 93]. The court conducted a hearing on September 27, 2017 and has subsequently taken the Application under advisement.

## DISCUSSION

In the Application, Walden seeks allowance of the Final Accounting in the amount of $123,414.47 as an administrative expense of the Debtors' bankruptcy estate. Walden also seeks payment of its attorneys' fees. The Application calls into question the rules governing payment of prepetition receivers as well as the right to payment of such a receiver whose status and right to payment at the commencement of a bankruptcy case is uncertain.

A.   <u>The Statutory Framework for Compensating Walden</u>

The Bankruptcy Code contains direct guidance on the treatment of situations such as these. To begin, as a prepetition, state-court appointed receiver, *see* 65 Ill. Comp. Stat. Ann. 5/11-31-2, Walden is a "custodian" within the meaning of the Bankruptcy Code. 11 U.S.C. § 101. Section 101 defines custodian as a

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
>
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
>
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11). There is no question that Walden qualified as a custodian under section 101(11)(A).

While entities other than custodians are required to turn over property of the bankruptcy estate in their possession, 11 U.S.C. § 542(a); *Bank of Am., N.A. v. Veluchamy (In re Veluchamy)*, Case No. 15-2902, 2018 WL 387367, at *6 (7th Cir. Jan. 12, 2018), custodians' actions are instead governed, at least in part, by section 543 of the Bankruptcy Code.

Section 543(b) of the Bankruptcy Code contains a turnover provision similar to that in section 542(a), stating that "[a] custodian shall ... deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case." 11 U.S.C. § 543(b)(1). Such a custodian is entitled to "payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian." 11 U.S.C. § 543(c)(2).

A custodian who has been superseded under section 543 is also entitled to receive administrative expense reimbursement. Such custodian shall receive an administrative expense claim for the actual, necessary expenses, incurred by him or her, including compensation for his or her

5

services. 11 U.S.C. § 503(b)(3)(E). For a custodian seeking reimbursement under section 503(b)(3), such custodian's professionals may not be also compensated thereunder. Rather, such professionals' reasonable compensation, based on the time, the nature, the extent, and the value of such services, and actual, necessary expenses are separately compensable. 11 U.S.C. § 503(b)(4).

B.   The Confusion in the Statute

While the foregoing makes clear that Congress has given some thought to situations such as these, the expression of that thought in the statute is problematic. As neither party hereto has gone to much effort to provide controlling case law on these issues, the court is left to consider them.

Sections 543 and 503 create different standards for compensation. Under section 543, a custodian is entitled to "reasonable compensation for services rendered and costs and expenses." 11 U.S.C. § 543(c)(2). Under section 503, the custodian may receive an administrative expense for "actual, necessary expenses" and "compensation for services." 11 U.S.C. § 503(b)(3).

The differing use and placement of the modifiers here is challenging. For example, as to costs and expenses, are they under section 543 required to be reasonable, or does reasonable only modify compensation? The latter seems a better reading of the construct, but if so, it would appear there is no limitation on the payment of such costs and expenses. If the former, might expenses be reasonable for the purposes of section 543 but not actual and necessary for the purposes of section 503? What then?

Compensation fares no better. Section 503, as drafted, appears to allow an administrative expense for all compensation of a custodian superseded under section 543. 11 U.S.C. § 503(b)(3) ("the actual, necessary expenses ... incurred by ... (E) a custodian superseded under section 543 of this title, *and compensation for the services of such custodian.*") (emphasis added). The use of "and" instead of "including" severs the potential connection to the modifier "actual, necessary"). But under section 543, such compensation must be reasonable. Which is it?

Further in question is the treatment of attorneys' fees under the two different sections. Section 503(b) makes clear that a custodian's attorneys' fees are handled separately—both by separately addressing them in section 503(b)(4) and by carving out from section 503(b)(3) those fees. See 11 U.S.C. § 503(b)(3) ("the actual, necessary expenses, *other than compensation and reimbursement specified in paragraph (4) of this subsection,* incurred by ....") (emphasis added). Section 543(c)(2) does not contain anything regarding attorneys' fees, though arguably section 543(c)(1) might include a custodian's attorney as a party to whom the custodian has become obligated. Once again, this is overly complex and lacking in clarity.

Recently the court was faced with questions regarding the overlap between sections 503 and 543 in another, unrelated case. *In re Stainless Sales Corp.*, Case No. 17bk03148, 2017 WL 6550593, at *3-4 (Bankr. N.D. Ill. Dec. 22, 2017). In *Stainless Sales*, the court held that it was necessary to read section 503 in such a way as to make it meaningful in light of the contents of section 543. *Id.* at *4 (relying on *United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) ("We will not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous.")).

Looking closely at the two sections in question, the distinguishing factor appears to be the nature of the custodian. As noted above, section 503 applies to custodians "superseded under section 543 of this title." 11 U.S.C. § 503(b)(3)(E). The use of the phrase "such custodian" in that same section clearly refers to a custodian so superseded. *Id.*[4] Thus such superseded custodians may seek an administrative expense for their "actual, necessary expenses" and also "compensation for services." *In re Am. Motor Club, Inc.*, 125 B.R. 79, 83 (Bankr. E.D.N.Y. 1991) ("[A] custodian may have its claim paid as an administrative expense only if it was administering the estate when the bankruptcy petition is filed."). As noted above, a plain reading of this section is that such compensation need not be shown to be actual and necessary—the modifiers simply do not reach that phrase.

Section 543 also refers to "such custodian" when it states that "[t]he court, after notice and a hearing, shall— ... (2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by *such custodian.*" 11 U.S.C. § 543(c)(2) (emphasis added). In that instance, it is not immediately clear who such custodian is. The immediately preceding subsection refers to the duty of custodians in the possession, custody, or control of property of the debtor to turn such property over to the trustee. 11 U.S.C. § 543(b).[5]

If the court were to assume that the "such custodian" reference in subsection (c) referred to the custodian superseded in subsection (b), the same redundancy as was possible in *Stainless* would occur here. A superseded custodian would be entitled to both an administrative expense for "actual, necessary expenses" and "compensation for services," 11 U.S.C. § 503(b)(3)(E), and the "payment of reasonable compensation for services rendered and costs and expenses incurred." 11 U.S.C. § 543(c)(2). A reading creating this redundancy is presumptively incorrect. *Firearms, Explosives*, 376 F.3d at 712.

If, instead, the court presumed that "such custodian" means simply a custodian as defined in subsection (a), one with knowledge of the commencement of a case under this title concerning the debtor, in possession, custody, or control of property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, 11 U.S.C. § 543(a), such redundancy would, in part, fall away. While such custodian would, by nature of the statute, include superseded custodians (after all, only custodians who qualify under (a) are superseded under (b)), it would also include custodians who were not superseded as compliance with section 543 had been excused

---

[4] Another possible reading of section 503(b)(3)(E) is to presume that the phrase "superseded under section 543 of this title" means all custodians in section 543, regardless of how such custodians are treated under the latter section. This reading is problematic for two reasons: First, supersession requires some meaning. *Firearms, Explosives*, 376 F.3d at 712. The use of the term superseded is superfluous if section 503 simply meant a custodian who met the criteria of section 543(a). Second, this broad reading of section 503(b)(3)(E) makes it entirely redundant with section 543(c)(2). *Id.*

[5] The turnover provision in section 543(b) includes proceeds, product, offspring, rents, or profits of such property of the debtor but, for some reason, does not seem to include property of the estate though subsection (a) of section 543 does expressly include property of the estate in setting the stage. Read literally, this would seem to say that a custodian must turn over property of the debtor but not property of the estate. Perhaps this was the intent of Congress but, taken with the exclusion of custodians from the general estate turnover provision in section 542(a), this appears to create an unintentional loophole in the turnover provisions. Because neither party challenges this issue here, the court will presume that the Property herein was subject to the turnover provisions in section 543(b).

7

under subsection (d). *See* 11 U.S.C. § 543(d) ("After notice and hearing, the bankruptcy court—(1) may excuse compliance with subsection (a), (b), or (c) of this section ...."). Nothing in the wording of these sections makes them mutually exclusive.

While this reading, combined with the earlier reading of section 503(b)(3)(E), is more straightforward under the circumstances, it has the ironic result of custodians who did not remain in active service being entitled to administrative expenses while those who continue to serve postpetition being unentitled to the same. Ordinarily administrative expenses are reserved for those who provide a postpetition benefit to the estate. *But see Stainless Sales*, 2017 WL 6550593, at *7.

It should be noted that some courts appear to simply collapse the sections, thereby avoiding this mess. *See, e.g., In re Forde*, 507 B.R. 509, 521 (Bankr. S.D.N.Y. 2014) ("Receivers are compensated pursuant to § 543(c). .... If allowed, the Receiver's fees and expenses are entitled to be treated as an administrative expense pursuant to § 503(b)(3)(E)"). The problem with that approach is that, as noted above, the standards in the two sections are different—something the *Forde* court failed to reflect in its opinion. *Id.*

Other courts have assumed that section 543(c)(2) does not allow for prepetition claims of custodians, while section 503(b)(3)(E) does. *In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.*, 592 F.3d 664, 672 (5th Cir. 2009) ("*While pre-petition services are not governed by § 543*, they are governed by § 503(b)(3)(E) ...."). The problem is that section 543 says nothing of the sort.

These solutions are not solutions at all, as they require the court to turn a blind eye to the actual wording of the statute in favor of expedience. This court, as the trial court and the court of first instance, should be constrained by the words of the statute itself when those words are clear.

It should also be noted that the legislative history is uninformative, providing explanations with respect to sections 543(d) and 101(10), but simply repeating the terms of the statute in relation to section 543(c). *See, e.g.,* S. Rep. No. 95–989, 95th Cong., 2nd Sess. at 85, 1978 U.S. Code Cong. Ad. News at pp. 5787, 7871; H. Rep. No. 95–595, 95th Cong., 2nd Sess. at 370, 1978 U.S. Code Cong. Ad. News at pp. 5785, 6326.

The answer may be found, in part, in the unique wording of section 543 regarding payment. Section 543(c) states that the court shall "*provide for the payment of* reasonable compensation for services rendered and costs and expenses." 11 U.S.C. § 543(c)(2). The phrasing "provide for the payment" does not occur elsewhere in the Bankruptcy Code, except in the provisions relating to plans. *See, e.g.,* 11 U.S.C. § 1123(a)(8); 11 U.S.C. §§ 1222(b)(7) & (11); and 11 U.S.C. § 1329(c).

The passive wording of this phrase makes sense when one considers that a custodian might include a party whose compensation is provided for from third party sources. *See, e.g.,* 11 U.S.C. §§ 101(11)(A) & (C). In such an instance, providing for the payment of such a custodian may be simply to allow the custodian to pursue its nonbankruptcy right of payment. Further, section 543(a) includes both property of the estate *and* property of the debtor. Thus, it might be that a custodian within the meaning of section 543(c)(2) might have no recourse against the debtor individually or the bankruptcy estate, but only the debtor's nonestate property. Again, in such an instance, the court would not be allowing such a custodian compensation from the estate, but instead allowing the custodian to proceed in a nonbankruptcy manner.

In both instances, it therefore makes sense that the court's standard of review is the lesser standard of reasonableness, rather than the more rigid actual and necessary standard required in section 503(b)(3)(E) when estate property is necessarily and primarily implicated. *Cf. Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1127 (7th Cir. 2003) (even if a chapter 7 attorney's fees are prepaid prepetition and thus no payment from the bankruptcy estate is sought, the court nonetheless is empowered under section 329 to review the reasonableness of such compensation and recoup any excessive payment beyond the reasonable value of the legal services for the benefit of other creditors).

The additional optionality that providing for payment allows makes sense for these circumstances. It does, however, continue to apply when a custodian has been superseded and thus is also entitled to seek allowance of an administrative expense under section 503(b)(3)(E).

In that instance (where a superseded custodian might argue for compensation from both sections), given the discretion afforded the court in considering which section to apply, the best use of that discretion is as follows: If and to the extent the compensation requested of the custodian is to be paid from estate property, the heightened standard of actual and necessary as set forth in section 503(b)(3)(E) should be applied. To the extent compensation is from another source, the reasonableness standard in section 543(c)(2) should apply.[6] If a custodian is excused from compliance under section 543(d), however, only the section 543(c)(2) reasonableness standard would apply. That comports with the abstention principles behind section 543(d) as set forth in the legislative history.

While the court will adopt the reading set forth herein despite the odd result, it is not without reservations and the overall impression that the entire scheme as set forth in the Bankruptcy Code is in desperate need of revision.

C.    Walden's Rights under the Foregoing Analysis

As noted above, there is no contention here that Walden is anything other than a custodian as defined in section 101(11)(A). The State Court entered the Receiver Orders appointing Walden as receiver over the Property, thereby satisfying this portion of the statute.

There is some contention, however, whether Walden is a custodian as is set forth in section 543(a). The Debtors argue that Walden's role as custodian had ceased as of the Petition Date, and thus, Walden was not within the scope of section 543 (and thereby, not within the scope of section 503(b)(3)(E)). In support of this argument, they point to the obvious fact that the building located on the Property has been demolished. The Debtors also argue that Walden itself has admitted in its motions to the court that it was discharged as receiver. *See, e.g.,* Relief from Stay Motion, at ¶ 4 ("Movant was discharged as the receiver on December 12, 2016 ...."). Finally, the Debtors argue that Walden has not complied with section 543(b) by turning over the Property and filing an accounting, and thus should be prevented from seeking compensation from the court.

---

[6]    It follows that a custodian seeking reimbursement of its professionals' fees must meet the heightened standard of section 503(b)(4) if and to the extent estate property will be used for compensation, but arguably could include such fees in its expenses under the reasonableness standard of section 543(c)(2) if estate property is not used.

None of the Debtors' arguments defeat the status of Walden as a custodian within the scope of section 543(a). As this court has previously held in this same case, but for the filing of the bankruptcy petition, it is clear that Walden would have been entitled to seek a lien from the state court to secure what it is owed. *See Walden Invs.*, 2017 WL 6541135, at *11-12. Walden appears to be exactly the kind of custodian that these sections are there to protect and is a custodian within the scope of section 543(a). *Cf. In re Cash Currency Exch., Inc.*, 762 F.2d 542, 553 (7th Cir. 1985). Nonetheless, the court will consider each in turn.

The Debtors' first two arguments point out a fundamental limitation on reimbursement under sections 503(b)(3)(E) and 543(c)(2). Neither section applies to custodians generally, but rather, each appear limited to those custodians who meet the constraints of section 543(a). Put another way, neither section creates a prioritized claim procedure for past custodians, only those in custody of qualifying property on the petition date. Such past custodians are creditors and, while they may be owed monies for their service, unless such past custodians remain custodians within the confines of section 543(a) on the petition date, they may not avail themselves of either sections 503(b)(3)(E) or 543(c)(2). *Am. Motor Club, Inc.*, 125 B.R. at 83 ("[A] custodian may have its claim paid as an administrative expense *only if it was administering the estate when the bankruptcy petition is filed.*") (emphasis added).

These arguments do not, however, hold up when the facts at bar are more carefully considered.

The Receiver Orders are clear on their faces to not be limited solely to the demolition of the building on the Property. Additional duties include keeping "the subject property vacant and secure" and removing "all junk, debris, and rubbish from the lot." First Receiver Order, at ¶¶ 1 & 2. These duties appear to be of a type that would continue on even after demolition of the building on the Property. Further, even more duties were added on December 12, 2016, when the State Court ordered Walden to repair a neighbor's fence. The court can find no reading of the Receiver Orders that would cause Walden to be automatically discharged on demolition of the Property. The Debtors have failed to identify, and the court cannot independently find, any order actually discharging Walden from its role as receiver.

In the absence of such, the second point is solely whether Walden should be bound by the statements made in its earlier motions. That argument fails. The Debtors cite no authority for their reliance on the prior statements. That omission is careless, at best. In the absence of such authority, the court might presume they might mean to assert judicial estoppel. Judicial "[e]stoppel is 'an equitable doctrine invoked by a court at its discretion' ...." *United States v. Trudeau*, 812 F.3d 578, 584 (7th Cir.), *cert. denied*, 137 S. Ct. 566 (2016) (*citing New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

> Judicial estoppel "precludes parties from abandoning positions taken in earlier litigation. *Himel v. Continental Illinois National Bank*, 596 F.2d 205, 210 (7th Cir. 1979). The principle is that if you prevail in Suit # 1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." *Eagle Foundation, Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir. 1987).

*Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1547 (7th Cir. 1990). The Seventh Circuit in *Astor* made clear that it is not simply taking contrary positions, but a party taking a

10

position contrary to one on which it had prevailed earlier. *Id.* at 1548 ("We agree with those courts that limit judicial estoppel to taking a position inconsistent with one underlying a prior judgment. The offense is not taking inconsistent positions so much as it is *winning*, twice, on the basis of incompatible positions.").

Here, the Relief from Stay Motion was *unsuccessful*, thus defeating the predicates for judicial estoppel. Walden has changed counsel in the case since those statements were made, and the positions taken by new counsel do not rely on the prior statements. Further, there is no evidence that the Debtors have in any way relied on the earlier assertions to their detriment. Thus, even if the predicates for judicial estoppel had been met, the court would decline to apply it here.

The Debtors' final argument goes to whether Walden has complied with the terms of section 543(b). The Debtors assume that such compliance is a requirement for payment under section 543(c)(2), and argue that as Walden as not complied, no payment should be authorized.

This argument fares no better than the earlier ones. First, as the foregoing analysis makes clear, section 543(c)(2) payment does not turn on whether a custodian has been superseded or not. Holding compliance with section 543(b) to be a prerequisite to payment under section 543(c)(2) would exclude from that payment custodians who have been excused from compliance under section 543(d). That does not appear to be the intent of Congress here.

Second, though compliance with section 543(b) is not required, the court finds that in this instance, Walden has complied. With respect to section 543(b)(1), as the Property is vacant land, turnover is a legal act only. *Cf. In re Ware*, 533 B.R. 701, 707 (Bankr. N.D. Ill. 2015) (Barnes, J.) (surrender of nonresidential real property can mean either legal or physical surrender, or both). There are no keys to hand over. The Debtors point to no incidences postpetition where Walden has acted in contravention to section 543(b)(1), and the existence of the Sale Motion wherein the Debtors seek to sell the Property makes clear that the Debtors have the legal possession that is anticipated. With respect to section 543(b)(2), while it may not suffice in all cases, the filing of the Final Accounting and the Application appear to have satisfied this requirement.

Walden is therefore entitled to seek both "payment of reasonable compensation for services rendered and costs and expenses incurred" by Walden, 11 U.S.C. § 543(c)(2), and to seek an administrative expense for the actual, necessary expenses, incurred by Walden, including compensation for Walden's services. 11 U.S.C. § 503(b)(3)(E). Because it appears that Walden's only source of compensation is out of the Property, which is property of the bankruptcy estate, *see* 11 U.S.C. § 541(a); *Cash Currency*, 762 F.2d at 553-54, the court will apply the section 503(b)(3)(E) standard to the Application.

D.  Application to the Facts at Bar

While the foregoing may or may not be helpful in advancing the ultimate determination of Walden's Application, what is clear to the court is that the Application, at this stage, can go no further.

As noted above, the Final Accounting upon which the Application here is based is, politely stated, internally inconsistent at points. More directly to the point, it is a jumbled mess—a data dump with no guidance whatsoever for the court to follow in determining whether asserted items

meet the applicable standards. While it is not necessarily the case that the Application must conform to this District's standards for professional compensation requests, the court will be guided somewhat by those standards when the time comes. At a minimum it must be made clear what Walden is seeking and why it is entitled to receive it.[7]

The court could disallow the Application for these reasons alone. As it has previously stated:

> "It is not the Court's responsibility to find arguments, facts, and supporting case law for the parties." *Sanders v. JGWPT Holdings, Inc.*, Case No. 14 C 9188, 2016 WL 4009941, at *11 (N.D. Ill. July 26, 2016). Instead, it is the "advocate's job . . . to make it easy for the court to rule in his client's favor." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 754 F.Supp.2d 984, 985 (N.D. Ill. 2010) (citing *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)); *see also Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F.Supp.2d 503, 508 (N.D. Ill. 2011) (summarizing the foregoing).

*In re Ace Track Co., Ltd.*, 556 B.R. 887, 903 (Bankr. N.D. Ill. 2016). Given that the standard applied to Walden was not clear from the outset, the court believes it would be fundamentally unfair to parse the Application at this time. Walden should be afforded the opportunity to prove up its claim in light of these standards.

## CONCLUSION

Having considered all of the foregoing, the court therefore concludes that, while Walden individually meets the criteria for seeking reimbursement under both sections 503(b)(3)(E) and 543(c)(2), the Application itself must proceed under section 503(b)(3)(E) and must be revised to specifically address how the applicable standards of that section have been met for each of the items contained in the Application. Further, the Application must be presented in a manner that makes clear exactly what is sought and why, with an organized presentation that allows the court to properly consider the request.

A separate order will be issued concurrent with this Memorandum Decision to that effect.

Dated: February 13, 2018

Timothy A. Barnes
United States Bankruptcy Judge

---

[7] Under the section 503(b)(3)(E) standard, Walden may not seek compensation for its professionals' fees as part of this request. Any such request must be made separately, under section 503(b)(4).